UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| KELLYANN HOPKINS and ROBERT J. HOPKINS | : | |
| Debtor | : | Bankruptcy No. 06-15503bif |

| | | |
|---|---|---|
| KELLYANN HOPKINS and ROBERT J. HOPKINS | : | |
| Plaintiff | : | |
| v. | : | |
| FIRST NLC FINANCIAL SERVICES, LLC; LITTON LOAN SERVICING, LP, and JP MORGAN CHASE BANK, N.A. | : | |
| Defendant | : | Adversary No. 07-0114 |

......................................................

MEMORANDUM

......................................................

The above-captioned adversary proceeding was filed by the debtors on

March 14, 2007, alleging one count under the Truth in Lending Act (TILA), 15 U.S.C. §§

1601, et seq., against defendants First NLC Financial Services, LLC and JP Morgan

Chase Bank, N.A. A second count under the Real Estate Settlement and Procedures Act

(RESPA), 12 U.S.C. §§ 2601, et seq., was asserted against those two defendants as well

as defendant Litton Loan Servicing, LP.

Insofar as Count I is concerned, the plaintiffs allege that defendant First

NLC loaned them money on September 7, 2005, but did not provide them with certain

variable rate disclosures and booklets required by 12 C.F.R. § 226.19, which failure

constitutes a material violation of TILA. Complaint, ¶ 12. They also assert that First

NLC failed to provide them with accurate disclosures of "certain terms of the

transaction," including the correct "finance charge," which failure also gives rise to a

material violation of the TILA. Id., ¶ 13. These failures were purportedly "apparent on

the face of the loan documents" thereby rendering any assignee of First NLC also liable

for TILA violations. Id., ¶ 14. Finally, in Count I, the plaintiffs aver that they exercised

their right to rescind the loan transaction, but defendants First NLC and JP Morgan

wrongfully refused to rescind the loan. Id., ¶ 15.

As for relief in Count I, the plaintiffs seek rescission of the September 2005

loan transaction, pursuant to 15 U.S.C. § 1635, as well as statutory damages under TILA,

plus costs and attorneys' fees.

In Count II, the plaintiffs allege that the defendants failed to adequately

respond to the plaintiffs' November 27, 2006 "qualified written request" for information

regarding the mortgage transaction, purportedly violating 12 U.S.C. § 2605(e), (f), and

allegedly rendering them liable for damages, as well as attorneys' fees and costs under

RESPA. Complaint, ¶ 17.

On April 12, 2007, defendant First NLC filed an answer to the complaint,

plus affirmative defenses, which pleading it amended on April 17, 2007. Then on April

27, 2007, First NLC filed a motion for judgment on the pleadings. On April 12, 2007,

defendants JP Morgan and Litton jointly filed a motion to dismiss, asserting that the

plaintiffs failed to state any claims against them. These two motions from the three

defendants are presently before me.

2

At oral argument held on those motions, the parties all agreed that First

NLC was the loan originator and original holder of the note and mortgage, JP Morgan is

the loan assignee from First NLC, and Litton is simply the loan servicer. Based upon that

understanding, the plaintiffs conceded that Count II should be dismissed against

defendants First NLC and JP Morgan, as their RESPA claim was applicable only to loan

servicers such as Litton.[1]

In addition to dismissal of Count II, First NLC contends that it is also

entitled to judgment on the pleadings as to Count I because Exhibit A to plaintiffs'

complaint, a loan document signed by them,[2] identifies the loan as involving a variable

---

[1]Count I was not asserted against Litton, as, in general, TILA claims would not
yield any relief against loan servicers. See generally 15 U.S.C. § 1641(f)(1); Payton v. New
Century Mortgage Corp., 2003 WL 22349118, at *5 (N.D. Ill. 2003).

[2]The exhibit attached to the complaint is not signed but the defendants provided a
signed copy of this same document. Such a document, relied upon by the plaintiffs in their
complaint, may be considered for purposes of a motion to dismiss. See Pryor v. NCAA, 288
F.3d 548, 560 (3d Cir. 2002):

> "[D]ocuments whose contents are alleged in the complaint and
> whose authenticity no party questions, but which are not physically
> attached to the pleading, may be considered. *** Documents that
> the defendant attaches to the motion to dismiss are considered part
> of the pleadings if they are referred to in the plaintiff's complaint
> and are central to the claim; as such, they may be considered by the
> court."

(quoting 62 Fed. Proc., L. Ed. § 62:508). See also Pension Benefit Guaranty Corp. v. White
Consolidated Industries, Inc., 998 F.2d 1192, 1196-97 (3d Cir. 1993), cert. denied, 510 U.S. 1042
(1994):

> We previously left open whether a court may properly consider a
> concededly authentic document upon which the complaint is based
> when the defendant attaches such a document to its motion to
> dismiss. We now hold that a court may consider an undisputedly
> authentic document that a defendant attaches as an exhibit to a

(continued...)

3

interest rate, and this document has a box checked stating that "variable rate disclosures have been provided at an earlier time." In addition, First NLC contends that the plaintiffs failed to allege in their complaint that misdisclosure of the finance charge exceeded the permissible tolerance amount; and this defendant asserts that the plaintiffs' rescission election was untimely.

Defendant JP Morgan maintains that Count I should be dismissed for failure to state a claim for the reasons articulated by First NLC, and because the loan documents attached by the plaintiffs to their complaint reveal no error on the face of the documents in the computation of the finance charge. In addition, to the extent that the plaintiffs alleged that certain charges were excessive and/or should have been included in the finance charge, JP Morgan argues that the complaint fails to state a cause of action by failing to identify which charges were improperly excluded.

---

[2](...continued)

motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied. Our decision will not undermine the rationale underlying Rule 12(b)(6)'s requirement that a motion to dismiss be converted to a summary judgment motion if a court considers matters outside the pleadings. The reason that a court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense is to afford the plaintiff an opportunity to respond. When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished.

(citations omitted); accord In re Rockefeller Center Properties, Inc. Securitites Litigation, 184 F.3d 280, 287 (3d Cir. 1999); In re Beck, 272 B.R. 112, 114 n.1 (Bankr. E.D. Pa. 2002).

4

Finally, defendant Litton argues that dismissal of Count II is mandated because its response to the plaintiffs' qualified written request was statutorily sufficient under RESPA.

I.

The defendants' various contentions seeking dismissal of plaintiffs' two causes of action should be evaluated against the following background.

A.

The defendants have proceeded under two different provisions of Federal Rule of Civil Procedure 12 (incorporated into bankruptcy adversary proceedings by Fed. R. Bankr. P. 7012(b)), although the application of these provisions is similar. Subsection (c) of Rule 12 provides:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

As explained by the Third Circuit Court of Appeals, a trial court may not grant a motion for judgment on the pleadings

> unless the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law. . . . We must view the facts presented in the pleadings

5

> and the inferences to be drawn therefrom in the light most
> favorable to the nonmoving party.

Sikirica v. Nationwide Insurance Co., 416 F.3d 214, 220 (3d Cir. 2005); see, e.g., Hayes

v. Community General Osteopathic Hosp., 940 F.2d 54, 56 (3d Cir. 1991); Institute for

Scientific Information, Inc. v. Gordon & Breach, Science Publishers, Inc., 931 F.2d 1002,

1004 (3d Cir. 1991); Society Hill Civic Ass'n v. Harris, 632 F.2d 1045, 1054 (3d Cir.

1980). Thus, when a Rule 12(c) motion is raised by a defendant, the factual assertions

made in the plaintiff's amended complaint are accepted as true, as well as reasonable

inferences from those facts.

Similarly, a claim should not be dismissed for failure to state a cause of

action under Rule 12(b)(6), incorporated by Federal Rule of Bankruptcy Procedure

7012(b), unless it appears beyond doubt that the plaintiff can prove no set of facts in

support of that claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41,

45-46 (1957). A trial court must accept as true all of the well-pleaded facts alleged in the

complaint and any reasonable inferences therefrom. See Scheuer v. Rhodes, 416 U.S.

232, 236 (1974); Gibson, 355 U.S. at 45-46.

> A motion to dismiss pursuant to Rule 12(b)(6) may be granted
> only if, accepting all well pleaded allegations in the complaint
> as true, and viewing them in the light most favorable to
> plaintiff, plaintiff is not entitled to relief. Bartholomew v.
> Fischl, 782 F.2d 1148, 1152 (3d Cir. 1986). "The issue is not
> whether a plaintiff will ultimately prevail but whether the
> claimant is entitled to offer evidence to support the claims."
> Scheuer v. Rhodes, 416 U.S. 232, 236 . . . (1974).

In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1420 (3d Cir. 1997).

Thus, as defendant First NLC acknowledged, when a defendant files a Rule

12(c) motion, the appropriate standard for determination is identical to that used in

6

deciding whether to grant a Rule 12(b)(6) motion to dismiss a complaint for failure to

state a cause of action: that is, either motion can only be granted if, after accepting as true

the plaintiffs' factual averments and reasonable inferences, the defendant is entitled to

judgment as a matter of law. See Institute For Scientific Information, Inc. v. Gordon and

Breach, Science Publishers, Inc., 931 F.2d at 1004. (One technical difference between a

motion under Rule 12(b)(6) and one under Rule 12(c) is the timing. The former motion

must be filed before any responsive pleading, while the latter motion is filed after the

close of the pleadings. See Turbe v. Government of the Virgin Islands, 938 F.2d 427, 428

(3d Cir. 1991)). "In this fashion the courts hope to insure that the rights of the

nonmoving party are decided as fully and fairly on a rule 12(c) motion, as if there had

been a trial." Society Hill Civic Ass'n v. Harris, 632 F.2d at 1054 (quoting 5 C. Wright &

A. Miller, Federal Practice and Procedure, § 1368, at 690 (1969)).

Moreover, even if a complaint is defective in failing to sufficiently plead a

claim, leave to amend, rather than dismissal, may be appropriate. "[U]nless the facts

alleged in the complaint clearly show that the plaintiff has no legitimate claim, courts

ordinarily will allow the plaintiff leave to amend the complaint." 2 Moore's Federal

Practice, § 12.34[5] at 12-77 (3d ed. 1999). But where repleading could not correct the

defects in a party's claim, a court should not grant leave to replead. See e.g., Alston v.

Parker, 363 F.3d 229, 235 (3d Cir. 2004) ("We have held that even when a plaintiff does

not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District

Court must permit a curative amendment, unless an amendment would be inequitable or

futile."); Peterson v. Philadelphia Stock Exchange, 717 F. Supp. 332, 337 (E.D. Pa.

1989); see generally Mosler v. M/K Ventures Int'l. Inc., 103 F.R.D. 385 (N.D. Ill. 1984);

7

see also Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983), cert.
denied, 464 U.S. 937 (1983); Sarfaty v. Nowak, 369 F.2d 256, 259 (7th Cir. 1966), cert.
denied, 387 U.S. 909 (1967) ("Rule 15(a) does not require a court to do a futile thing.").

B.

Congress enacted TILA "to assure a meaningful disclosure of credit terms
so that the consumer will be able to compare more readily the various credit terms
available to him and avoid the uninformed use of credit, and to protect the consumer
against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. §
1601(a); see Beach v. Ocwen Federal Bank, 523 U.S. 1408 (1998). In general, TILA is
construed in favor of borrowers. See Ramadan v. Chase Manhattan Corp., 156 F.3d 499,
502 (3d Cir. 1998).

In order to implement TILA, the Federal Reserve Board promulgated
Regulation Z, 12 C.F.R. Part 226, and also issued Official Staff Commentary to
Regulation Z and TILA, which is "accorded the same deference" as the regulations.
Wright v. Mid-Penn Consumer Discount Company, 133 B.R. 704, 708 (E.D. Pa. 1991)
(citing Ralph J. Rohner, The Law of Truth in Lending, 2.01[2][c] (1989)).[3]

---

[3]The Official Staff Commentary is found in Supplement I to Part 226, 12 C.F.R.
Part 226, and is titled "Official Staff Interpretations." The Supreme Court has instructed that
official staff interpretations concerning TILA are entitled to deference unless irrational. Ford
Motor Credit Co. v. Milhollin, 444 U.S. 555, 565 n.9 (1980); see Aronson v. Peoples Natural
Gas Co., 180 F.3d 558, 563 (3d Cir. 1999).

Both TILA and its implementing regulations require creditors to make various disclosures, depending upon the type of loan transaction and the type of security taken. 15 U.S.C. §§ 1631, 1635, 1638; 12 C.F.R. § 226.17. Certain of these disclosures are deemed "material disclosures" including: the annual percentage rate, the finance charge, the amount financed, an itemization of the amount financed, the payment schedule, and the total number of payments. 15 U.S.C. § 1602(u); 12 C.F.R. §§ 226.23 n.48. If a lender violates the material disclosure requirements of TILA, a credit consumer may be entitled to rescission of the loan. 15 U.S.C. § 1635; 12 C.F.R. § 226.23(a). If the lender fails to make all required disclosures, even non-material disclosures, the lender may be liable for statutory damages as well as reasonable attorneys' fees. 15 U.S.C. §1640.

If a loan contains a variable rate, involves a mortgage on the borrower's residence, and has a term longer than one year, the borrower is entitled to receive certain additional loan disclosures, including: "The booklet titled Consumer Handbook on Adjustable Rate Mortgages published by the Board and the Federal Home Loan Bank Board, or a suitable substitute"; the fact that the interest rate and payment of the loan can change; the index or formula used in making rate adjustments; a source of information about the index or formula; an explanation of how the interest rate and payment will be determined; and the frequency of interest rate and payment changes. 12 C.F.R. § 226.19(b).

The failure to provide certain variable rate disclosures may constitute a material TILA violation. As one court observed recently:

> In its commentary to this section of Regulation Z, the Federal Reserve Board explains that the failure to give material disclosures which extends the rescission period for three years includes "failure to inform the consumer of the existence of a

9

> variable rate feature." 12 C.F.R. Pt. 226 Supp. I. FRB
> Commentary to 12 C.F.R. § 226.23(a)(3), ¶ 2 (Material
> Disclosures). However, "[f]ailure to give the other required
> [variable interest rate] disclosures does not prevent the
> running of the rescission period, although that failure may
> result in civil liability or administrative sanctions." Id.

Oscar v. Bank One, N.A., 2006 WL 401853, at *2 (E.D. Pa. 2006), appeal dismissed,

2007 WL 843846 (3d Cir. 2007); Pulphus v. Sullivan 2003 WL 1964333, at *14 (N.D.

Ill. 2003):

> The plain meaning of the Board's commentary on 12 C.F.R. §
> 226.23(a)(3) is that only one variable rate disclosure
> violation-a lender's failure to disclose the existence of a
> variable rate feature-tolls the rescission period. A lender's
> failure to provide any of the other variable rate disclosures
> required by 12 C.F.R. §§ 226.18(f) and 226.19(b) may subject
> it to other sanctions, but it will not extend the rescission
> period granted to the consumer. According to the Supreme
> Court, "deference [to the Board] is especially appropriate in
> the process of interpreting the Truth in Lending Act and
> Regulation Z. Unless demonstrably irrational, [the Board's]
> staff opinions construing the Act or Regulation should be
> dispositive." Ford Motor Credit Co. v. Milhollin, 444 U.S.
> 555, 565 (1980). There is nothing irrational about the Board's
> desire to extend the period to rescind a loan, a rather
> Draconian remedy, only for those consumers who were
> completely unaware that their loan had a variable rate.
> Accordingly, we will adhere to the plain language of its
> interpretation and hold that the only variable rate disclosure
> that is material within the meaning of 12 C.F.R. §
> 226.223(a)(3) is the disclosure that a loan has a variable
> interest rate feature.

See also Andrews v. Chevy Chase Bank, FSB, 240 F.R.D. 612, 621 (E.D. Wis. 2007).

If a lender fails to provide all material disclosures, the borrower has up to

three years from the date of the loan transaction to exercise her right of rescission. 12

C.F.R. § 226.23(a)(3); see In re Community Bank of Northern Virginia, 418 F.3d 277,

305 (3d Cir. 2005). Moreover, Regulation Z describes the effects of a borrower's valid

exercise of a right of rescission, which procedures are subject to some court discretion:

> (d) Effects of rescission.
>
> (1) When a consumer rescinds a transaction, the security
> interest giving rise to the right of rescission becomes void and
> the consumer shall not be liable for any amount, including any
> finance charge.
>
> (2) Within 20 calendar days after receipt of a notice of
> rescission, the creditor shall return any money or property that
> has been given to anyone in connection with the transaction
> and shall take any action necessary to reflect the termination
> of the security interest.
>
> (3) If the creditor has delivered any money or property, the
> consumer may retain possession until the creditor has met its
> obligation under paragraph (d)(2) of this section. When the
> creditor has complied with that paragraph, the consumer shall
> tender the money or property to the creditor or, where the
> latter would be impracticable or inequitable, tender its
> reasonable value. At the consumer's option, tender of
> property may be made at the location of the property or at the
> consumer's residence. Tender of money must be made at the
> creditor's designated place of business. If the creditor does
> not take possession of the money or property within 20
> calendar days after the consumer's tender, the consumer may
> keep it without further obligation.
>
> (4) The procedures outlined in paragraphs (d)(2) and (3) of
> this section may be modified by court order.

12 C.F.R. § 226.23(d).

Concerning loan assignees, TILA provides that, with certain exceptions,

any action that

> may be brought against a creditor may be maintained against
> any assignee of such creditor only if the violation for which
> such action or proceeding is brought is apparent on the face of
> the disclosure statement . . . . For the purpose of this section,
> a violation apparent on the face of the disclosure statement
> includes, but is not limited to (1) a disclosure which can be

11

> determined to be incomplete or inaccurate from the face of the
> disclosure statement or other documents assigned, or (2) a
> disclosure which does not use the terms required to be used by
> this subchapter.

15 U.S.C. § 1641(a). Therefore, if the variable rate feature of a loan was not disclosed to

the plaintiffs, and this nondisclosure was apparent from the face of the loan documents,

then JP Morgan could also be liable under TILA. Similarly, if there were other TILA

violations on the face of the loan documents, the assignee/defendant could be held

responsible.

As noted earlier, the plaintiffs in this proceeding allege that the finance

charge was improperly disclosed. In general, a loan finance charge is defined as:

> the cost of consumer credit as a dollar amount. It includes
> any charge payable directly or indirectly by the consumer and
> imposed directly or indirectly by the creditor as an incident to
> or a condition of the extension of credit. It does not include
> any charge of a type payable in a comparable cash transaction.

12 C.F.R. § 226.4(a). The finance charge thus includes interest payments, points and

certain loan fees. Id. at § 226.4(b). Some charges and fees paid by a borrower may be

included in the finance charge, unless otherwise excluded by section 226.4(c)-(f), if the

creditor:

> (i) requires the use of a third party as a condition of or an
> incident to the extension of credit, even if the consumer can
> choose the third party; or
>
> (ii) retains a portion of the third-party charge, to the extent of
> the portion retained.

12 C.F.R. § 226.4(a)(1).

Section 1605(e) provides for the exclusion of certain charges from the

finance charge:

Items exempted from computation of finance charge in
extensions of credit secured by an interest in real property.

The following items, when charged in connection with any
extension of credit secured by an interest in real property,
shall not be included in the computation of the finance charge
with respect to that transaction:

(1) Fees or premiums for title examination, title insurance, or
similar purposes.
(2) Fees for preparation of loan-related documents.
(3) Escrows for future payments of taxes and insurance.
(4) Fees for notarizing deeds and other documents.
(5) Appraisal fees, including fees related to any pest
infestation or flood hazard inspections conducted prior to
closing.
(6) Credit reports.

15 U.S.C. § 1605(e). "Regulation Z clarifies that those costs are excluded from the

finance charge calculation if assessed in residential mortgage transactions or transactions

secured by real property, as long as they are 'bona fide and reasonable in amount. 12

C.F.R. § 226.4(c)(7) (1996).'" Stutman v. Chemical Bank, 1996 WL 539845, at *3

(S.D.N.Y. 1996); see Household Credit Services, Inc. v. Pfennig, 124 S. Ct. 1741, 1743

(2004) (where Congress left a gap for an agency to fill, "the agency's regulation is 'given

controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the

statute.'") (quoting Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467

U.S. 837, 842 (1984)).

The term "reasonable" has been defined as whether "the disputed charges

are comparable to the prevailing rates of the industry in the locality at the time of the

transaction." In re Crisomia, 2002 WL 31202722, at *7 (Bankr. E.D. Pa. 2002) (citing

Brannam v. Huntington Mortgage Co., 287 F.3d 601, 606 (6th Cir.), cert. denied, 123 S.

Ct. 123 (2002), quoting Grigsby v. Thorp Consumer Discount Co. (In re Grigsby), 119

B.R. 479, 487 (Bankr. E.D. Pa. 1990), vacated on other grounds, 127 B.R. 759 (E.D. Pa.

1991). "Thus, if the creditor picks an 'expensive' third party and is receiving a rebate,

there is some risk a hidden finance charge may be determined to exist." In re Grigsby,

119 B.R. at 488, quoting R. Rohner, The Law of Truth in Lending, ¶ 3.03[2][a], at 3-30 to

3-31 (1984).

      TILA grants to lenders a variance for accuracy in disclosing the finance

charge, so not every error results in liability:

> (f) Tolerances for accuracy
>
> In connection with credit transactions not under an open end credit plan that are secured by real property or a dwelling, the disclosure of the finance charge and other disclosures affected by any finance charge–
>
> (1) shall be treated as being accurate for purposes of this subchapter if the amount disclosed as the finance charge–
>
> (A) does not vary from the actual finance charge by more than $100; or
>
> (B) is greater than the amount required to be disclosed under this subchapter; and
>
> (2) shall be treated as being accurate for purposes of section 1635 of this title [rescission] if–
>
> (A) except as provided in subparagraph (B), the amount disclosed as the finance charge does not vary from the actual finance charge by more than an amount equal to one-half of one percent of the total amount of credit extended[.]

15 U.S.C. § 1605(f); see also 12 C.F.R. § 226.23(g).

14

C.

The Real Estate Settlement Procedures Act ("RESPA") imposes a duty upon loan servicers to respond to certain borrower inquiries. See Griffin v. Citifinancial Mortg. Co., Inc., 2006 WL 266106, at *2 (M.D. Pa. 2006). The Act provides for individual causes of action and "allows for actual damages, as well as statutory damages upon a showing of a pattern or practice of noncompliance with the duty to respond to borrower inquiries." Cortez v. Keystone Bank, Inc., 2000 WL 536666, at *10 (E.D. Pa. 2000); see also 12 U.S.C. § 2605(f).

A loan "servicer" is defined as "the person responsible for servicing of a loan." 12 U.S.C. § 2605(i)(2). RESPA defines "servicing" of a loan as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

Under RESPA, the borrower, or his agent, can initiate communication with the servicer by providing it with a qualified written request for loan information. See 12 U.S.C. § 2605(e)(1)(B). A qualified written request is defined as

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that–
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error

15

> or provides sufficient detail to the servicer regarding other
> information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B)(i)-(ii). The statute imposes a duty upon the loan servicer to

acknowledge receipt of the borrower's request within 20 days of receipt thereof. See 12

U.S.C. § 2605(e)(1)(A).

     RESPA also requires loan servicing companies to: "take appropriate action

with respect to the inquiry either by making corrections or providing a written explanation

or clarification; and . . . protect the borrower's credit rating by not reporting to credit

bureaus the overdue payments relating to the request for 60 days after receiving the

request." Hutchinson v. Delaware Sav. Bank FSB, 410 F. Supp. 2d 374, 382 (D.N.J.

2006); see also 12 U.S.C. § 2605(e)(2)(A)-(C).


D.


     In applying these legal principles to the defendants' instant motions, one

must also consider general federal pleading requirements.

     Federal Rule of Civil Procedure 8(a)(2), incorporated by Fed. R. Bank. P.

7008, provides for "notice pleading," that is, that "a pleading which sets forth a claim for

relief . . . shall contain . . . a short and plain statement of the claim showing that the

pleader is entitled to relief . . . ." This standard relieves a plaintiff from setting out in

detail all facts upon which he bases his claim. Williams v. United Credit Plan of

Chalmette, Inc., 526 F.2d 713, 714 (5th Cir. 1976). As noted by the Third Circuit:

> To meet Rule 8(a)'s liberal pleading requirements, a
> complaint need only contain a "short and plain statement of
> the claim" that "give[s] the defendant fair notice of what the

16

plaintiff's claim is and the grounds upon which it rests."
Fed.R.Civ.P. 8(a)(2); <u>Conley v. Gibson</u>, 355 U.S. 41, 47 . . . .
(1957).

<u>Still v. Regulus Group LLC.</u>, 123 Fed. Appx. 56, 58 (3d Cir. 2005) (non-precedential)

(parallel citation omitted).

Although more than "bare assertions of legal conclusions is ordinarily

required to satisfy federal notice pleading requirements[,]" <u>Advocacy Org. for Patients</u>

<u>and Providers v. Auto Club Ins. Ass'n</u>, 176 F.3d 315, 319 (6th Cir. 1999), "the alleged

facts need not be spelled out with exactitude, nor must recovery appear imminent."

<u>Quality Foods de Centro America v. Latin American Agribusiness Dev. Corp.</u>, 711 F.2d

989, 995 (11th Cir. 1983). "For fair notice to be given, 'a complaint must at least include

the operative facts upon which a plaintiff bases his claim.'" <u>Cunningham v. Equicredit</u>

<u>Corp. of Illinois</u>, 256 F. Supp. 2d 785, 792 (N.D. Ill. 2003) (<u>quoting</u> <u>Lucien v. Preiner</u>,

967 F.2d 1166, 1168 (7th Cir. 1992) (internal quotation omitted)). "The issue the court

reviews is whether 'sufficient facts have been pleaded to allow the district court to

understand the gravamen of the plaintiff's complaint.'" <u>Cunningham</u>, 256 F. Supp. at 792

(<u>quoting</u> <u>Doherty v. City of Chicago</u>, 75 F.3d 318, 326 (7th Cir. 1996)).

Therefore a complaint should not be dismissed because a plaintiff has not

pled all facts upon which his claim is based. <u>Williams v. United Credit Plan of</u>

<u>Chalmette, Inc.</u>, 526 F.2d 713, 714 (5th Cir. 1976). Discovery rules are intended to reveal

the details of a plaintiff's claim. <u>See</u> <u>In re Byrd</u>, 51 B.R. 649, 652 (Bankr. S.D. Ohio

1985) ("The availability of the several varieties of discovery common in federal practice,

as well as the availability of pre-trial conference procedures, all may be resorted to by

defendant in order to satisfy his desire for particularity."). Moreover, "[p]retrial

17

procedures such as summary judgment (Fed. R. Civ. P. 56) and the motion for a more

definite statement (Fed. R. Civ. P. 12(e)) are the appropriate devices to narrow the issues

and disclose the boundaries of the claim and defense." Id.

In applying the liberal notice pleading standard of Rule 8, courts have

generally required that plaintiff/borrowers provide enough information regarding the

defendant's alleged violation of a consumer protection statute so that the defendant is on

notice of the violation, but need not detail the specific violation.  For example, one court

observed:

> In her complaint, Plaintiff states that she was "entitled to a
> disclosure of the annual percentage rate and finance charges,"
> Compl. ¶ 14, and that "the disclosures provided to the
> plaintiffs [sic] were inaccurate," Compl. ¶ 15.  It does not
> matter that Plaintiff has not specified the specific statute or
> regulations that entitle her to relief. . . .  The allegation that
> the disclosure that she received was inaccurate is sufficient to
> state a claim upon which relief could be granted.

Staley v. Americorp Credit Corp., 164 F. Supp. 2d 578, 582-83 (D. Md. 2001).  In another

reported TILA decision, a court found the plaintiff's cursory allegations

sufficient under Rule 8(a).  The challenged pleading was described as follows:

> The Complaint alleges:
>
> 11. (b) The plaintiffs gave cancellation of the transactions on
> November 27, 2001.  The notice directed all further
> communications to Plaintiff's counsel.
>
> (c) This notice was received by the defendants.
>
> (Compl.¶ 11(b), (c).)  Count IX-A alleges "The Defendant
> took no appropriate action in response to the Plaintiffs' timely
> cancellation, in violation of 15 U.S.C. § 1635 and Regulation
> Z, 12 C.F.R. § 226.23."  These short and plain statements are
> sufficient to meet the requirements of Rules 8(a) and (e) and
> put the Defendants on notice as to the nature of the claim.

18

Brown v. Mortgagestar, Inc., 194 F. Supp. 2d 473, 477 (S.D. W.Va. 2002). And another

court refused to compel a borrower to plead in more detail with the following analysis:

> As to Paragraph 7a, CHC contends that the plaintiff should be
> required to set forth the manner in which a security interest is
> alleged to have been created or to be acquired by the
> defendant as well as the nature and circumstances of the
> disclosure deficiency in its contract. As to Paragraph 7b,
> CHC believes that the plaintiff should be required to allege
> which of the disclosures required by the cited regulation
> failed to meet the location requirement of the regulation.
>
> We do not believe that CHC's motion is well founded. The
> plaintiff is not required to set out in detail the facts upon
> which he bases his claims. Conley v. Gibson, supra. The
> details are available to this defendant through the utilization
> of the pretrial discovery techniques authorized in Rules 26-37,
> inclusive of the Federal Rules of Civil Procedure. The
> plaintiff's complaint meets the minimum requirements of
> notice pleading of Rule 8(a)(2), Fed. R. Civ. P., and thus
> necessitates the rejection of defendant's motion. It is clear
> that Rule 12(e) 'is designed to strike at unintelligibility rather
> than want of detail. If the pleading meets the requirement of
> Rule 8 and fairly notifies the opposing party of the nature of
> the claim, a motion for a more definite statement will not be
> granted.' 2A Moore's Federal Practice ¶12.18 . . . . Although
> plaintiff conceivably could have drafted his complaint in
> greater detail, his failure to do so is not inconsistent with the
> spirit of the modern rules of procedure that are designed to
> reduce complexity in pleading yet increase the pretrial
> knowledge of the litigants concerning the positions of their
> opponents through liberal pretrial discovery. The plaintiff has
> clearly put CHC on notice of the nature of his claims.
> Accordingly, CHC's motion for a more definite statement is
> denied.

Garza v. Chicago Health Clubs, Inc., 329 F. Supp. 936, 942 (D.C. Ill. 1971).[4]

---

[4]Compare Marks v. Chicoine, 2007 WL 160992, at *7 (N.D. Cal. 2007):

> Plaintiff's fifth cause of action, entitled "violation of the truth in
> lending act," lists a variety of statutes and regulations which were
> allegedly violated, including several sections of the Federal Trade

(continued...)

19

II.

I now turn to the specifics of defendants' motions to dismiss and for

judgment on the pleadings.

The plaintiffs do not dispute that they signed various documents including a

form entitled "Truth-In-Lending Disclosure for Real Estate Mortgage Loans (Variable

Rate Option)." See Exhibit A to Plaintiffs' Complaint. However, by virtue of 15 U.S.C.

§ 1635(c), "written acknowledgment of receipt of any disclosures required under this

subchapter by a person to whom information, forms, and a statement is required to be

given pursuant to this section does no more than create a rebuttable presumption of

delivery thereof." Therefore, plaintiffs are afforded the opportunity to rebut the

presumption of delivery of disclosures, see generally In re Williams, 232 B.R. 629, 640

---

[4](...continued)
Commission Act, the Truth in Lending Act (TILA), the Home
Ownership and Equity Protection Act, and TILA implementing
Regulation Z. The FAC does not allege how defendants violated
the various statutes and regulations mentioned, and thus does not
"give the defendant fair notice of what the plaintiff's claim is and
the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41,
47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957). The Court therefore
DISMISSES plaintiff's fourth cause of action, with leave to
amend. Should she choose to amend this cause of action, plaintiff
should be sure to comply with Rule 8(e) of the Federal Rules of
Civil Procedure, which requires that "each averment of a pleading
shall be simple, concise, and direct." In practical terms, the
requirements of Rule 8 ensure that a defendant will be able to
respond to the allegations against her. Edwards v. N. Am.
Rockwell Corp., 291 F. Supp. 199, 211 (C.D. Cal.1968) ( "Rule
8(a)(2) envisions the presentation of factual allegations of
sufficient clarity and certainty to enable defendants to determine
the basis of plaintiff's claim and to formulate a responsive
pleading.").

(Bankr. E.D. Pa. 1999), and their allegation of non-receipt of required documents cannot

be dismissed via a motion to dismiss. Cf. The Winer Family Trust v. Queen, 2004 WL

2203709, at *3 n.3 (E.D. Pa. 2004) (giving the plaintiff the benefit of a rebuttable

presumption of reliance in connection with defendant's Rule 12(b)(6) motion).[5]

Accordingly, dismissal of Count I as to defendants First NLC and JP Morgan, alleging

nondisclosure of the variable rate, is not appropriate at this time,

      JP Morgan also argues that the plaintiffs' allegation regarding misdisclosure

of the finance charge does not specify how the finance charge was inaccurate, while First

NLC contends that the plaintiffs' allegation on this point is deficient in that it does not

allege that the inaccuracy in the finance charge exceeded certain TILA tolerances for

disclosure. The challenged averment made by the plaintiffs is found in Count I:

> [T]he Plaintiffs were charged very high fees for a great many
> alleged purposes. Most of the charges on the Settlement
> Statement should have been disclosed as part of the "Finance
> Charge" in this transaction, but it appears that they were not.
> For example, First NLC charged an exorbitant prepaid finance

---

[5] I appreciate that Complaint Exhibit A, the TILA disclosure statement, does refer at the top to the "variable rate option"; moreover, the plaintiffs admit in paragraph 5 of their complaint that they received this disclosure statement. First NLC maintains that this admission alone proves that the plaintiffs received the material disclosure that they were signing a variable rate loan agreement and thus their claim for rescission is precluded on this point. It may. However, given my inability at this time to to address plaintiffs' other basis for rescission, I cannot strike the rescission demand from Count I pursuant to Rule 12(f) (incorporated by Fed. R. Bankr. P. 7012).

    I also do not now decide the quantum of evidence needed by the plaintiffs to rebut the presumption that they received various disclosures. Compare Oscar v. Bank One, N.A., 2006 WL 401853, at *3 (E.D. Pa. 2006) ("Plaintiffs' execution of the Federal Truth In Lending Disclosure Statement creates a presumption that those disclosures were, in fact received and Alvin Oscar's statement to the contrary is not, by itself, sufficient to rebut that presumption.") with In re Bell, 309 B.R. 139, 156 (Bankr. E.D. Pa. 2004) ("Because I find that the Debtor testified credibly that she was not given copies of the loan documents, including the Notice of Right to Cancel, at closing, she has rebutted the presumption of delivery on the Notice of Right to Cancel.").

> charge of $8,942.50, and an entity named Express Financial
> Services added charges of $320.00 of its own. When these
> and all other charges are analyzed, it is clear that charges
> properly characterized as part of the Finance Charge in this
> transaction have only been partially disclosed as such, if at all,
> which renders the disclosure of the Finance Charge and
> Annual Percentage Rate of the Finance Charge on the
> [Disclosure Statement] erroneous, which are material
> violations of the TILA.

Complaint, ¶ 6.

Count I cannot be dismissed on this issue, given the low pleading standard of Rule 8(a), as it sufficiently put the defendants on notice of the claim against them. It is not necessary for a plaintiff to allege in the complaint that a defendant exceeded the applicable tolerance. Inge v. Rock Financial Corp., 281 F.3d 613, 621 (6th Cir. 2002) ("Our examination of § 1605(f) leads us to conclude that it does not impose an independent pleading hurdle for TILA plaintiffs."). That issue can be raised by the defendants at a later time.[6]

Furthermore, for purposes of the instant motion, there is insufficient information to enable the court to determine whether the finance charge was correctly calculated. The plaintiffs allege that it was not. Although the complaint attaches the settlement sheet, Ex. B, which reveals the fees and charges paid by the plaintiffs at the

---

[6]The decisions First NLC cites in its reply memorandum, such as Guise v. BWM Mortgage LLC, 377 F.3d 795 (7th Cir. 2004) and Sterten v. Option One Mortgage Corp., 479 F. Supp. 2d 479 (E.D. Pa. 2007), do not hold that a TILA complaint must be dismissed if the borrower has not alleged that the misdisclosures exceed the statutory tolerance levels. Instead, decisions such as Guise hold that if the pleadings reveal the tolerance limits, and if the pleadings also make it clear that the plaintiff will be unable to prove at trial that the tolerance levels were exceeded, then the TILA claim may be dismissed prior to trial. Sterten holds that if, after trial, it is demonstrated that the tolerance level was not exceeded, the lender does not waive that tolerance protection even if the lender has not pled it as affirmative defense. The court in Sterten did not place any pleading obligation upon the plaintiff/borrower.

loan closing, there is no basis at present to evaluate the reasonableness of any such fees and charges. Accordingly, the defendants' request to dismiss plaintiffs' complaint for failure to state a claim as it pertains to inaccurate finance charge disclosures must be denied.

The parties agree that Litton Loan Servicing is the entity responsible for servicing the plaintiff/debtors' mortgage loan. Moreover, the letter attached to plaintiffs' complaint as Exhibit D may constitute a qualified written request for loan information under RESPA, as it is a written correspondence from the borrowers' agent that provided the loan servicer with the borrowers' names and account information, and included sufficient detail about the loan information the borrowers were requesting. See id.

I cannot decide for purposes of the instant motion to dismiss, however, whether Litton's December 14, 2006 reply, Exhibit E, complies with section 2605(e)(2) of RESPA. Plaintiffs' request posed nine specific inquiries to Litton. See Exhibit D. In its response, Litton answered four of those inquiries by referring to attachments to its December 14th letter. See Exhibit E. The complaint did not include copies of those attachments. Therefore, from a review of the complaint itself, it is not possible to determine whether Litton fully responded to plaintiffs' qualified written request for loan information in compliance with section 2605 of RESPA.

Accordingly, defendant Litton's motion to dismiss Count II of plaintiffs' complaint for failure to state a cause of action must be denied at this juncture.

If the plaintiffs are correct that First NLC failed to inform them of the variable rate component to their loan and provide them with the requisite disclosures, or failed to accurately disclose the finance charge, then First NLC may have violated TILA's

23

requirement to provide material disclosures, thereby extending the plaintiff's right to

rescind the loan transaction from three days to three years. See 15 U.S.C. § 1635(f); 12

C.F.R. § 226.23(a)(3). Because the loan transaction was consummated on or about

September 7, 2005, and the plaintiffs exercised their right to rescind the loan by way of

correspondence dated November 27, 2006, Ex. D, the rescission election, if valid, would

have been timely made.

      If the plaintiffs properly rescinded the loan, then they may be entitled to

relief not only from JP Morgan—the current note and mortgage holder—but even from

First NLC, the assignor. If First NLC received any payments from the plaintiffs prior to

assigning the note, it may have to disgorge those payments as part of rescission. See

Miranda v. Universal Financial Group, Inc., 459 F. Supp. 2d 760, 765 (N.D. Ill. 2006).

Since the record does not reveal whether First NLC received payments from the plaintiffs

prior to assignment of the loan to defendant JP Morgan, that component of Count I cannot

be adjudicated in First NLC's favor at this time. Id., at 765 ("The Court finds that there is

a question of fact as to whether the Assignee Defendants received and have retained any

such payments. If this factual question is construed in Miranda's favor she might be

entitled to relief from the Assignee Defendants, precluding dismissal.").

      The plaintiffs also allege that the defendants failed to honor their request to

rescind the loan. The "failure to honor a valid rescission demand is itself a TILA

violation giving rise to statutory damages." See 15 U.S.C. § 1640(a)(3); In re Armstrong,

288 B.R. 404, 419 (Bankr. E.D. Pa. 2003). Under TILA, a borrower "who is entitled to

rescission of a loan, may also recover a statutory damage award for the creditor's failure

to rescind voluntarily." Armstrong, 288 B.R. at 419. Accordingly, the plaintiffs have

asserted a claim for rescission and for damages against First NLC and JP Morgan that, conceivably, may entitle them to recovery.[7]

     In sum, accepting as true all of the plaintiffs' allegations, giving them the benefit of all reasonable inferences, and applying the liberal notice pleading standard, I cannot conclude that they fail to state causes of actions in Counts I and II (except that, as orally agreed, Count II is limited to defendant Litton).  Therefore, defendants' motions shall be denied.

     An appropriate order shall be entered.

---

[7]First NLC and JP Morgan are correct, however, that they cannot be held liable under Count I for statutory damages under section 1640 stemming from erroneous disclosures allegedly made in September 2005 when the loan closed, since this proceeding commenced beyond the one-year limitations period.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| KELLYANN HOPKINS and ROBERT J. HOPKINS | : | |
|         Debtor | : | Bankruptcy No. 06-15503bif |

| | | |
|---|---|---|
| KELLYANN HOPKINS and ROBERT J. HOPKINS | : | |
|         Plaintiff | : | |
| v. | : | |
| FIRST NLC FINANCIAL SERVICES, LLC; LITTON LOAN SERVICING, LP, and JP MORGAN CHASE BANK, N.A. | : | |
|         Defendant | : | Adversary No. 07-0114 |

...................................................

ORDER

...................................................

AND NOW, this 22nd day of June 2007, for the reasons stated in the

accompanying memorandum, it is hereby ordered that the defendants' motions for

judgment on the pleadings and to dismiss for failure to state a claim are denied, except

Count II is dismissed as to defendants JP Morgan Chase Bank, N.A., and First NLC

Financial Services, LLC.

_____
BRUCE FOX
United States Bankruptcy Judge

Copies to:

David A. Scholl, Esquire
Regional Bankruptcy Center of SE PA
6 St Albans Avenue
Newtown Square, PA 19073

Sandhya M. Feltes, Esquire
Kaplin Stewart Meloff Reiter & Stein, P.C.
Union Meeting Corporate Center
910 Harvest Drive
Blue Bell, PA 19422

Jonathan J. Bart, Esquire
Wilentz Goldman & Spitzer P.A.
Two Penn Center Plaza, Suite 910
Philadelphia, PA 19102